IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

JANE DOE, *M.L.M.*                                                                                    PLAINTIFF

v.                                            No. 5:17CV00013 JLH

JEFFERSON COUNTY, ARKANSAS;
GERALD ROBINSON, individually and in his
official capacity; GREG BOLIN, individually and
in his official capacity; TYRA TYLER, individually
and in her official capacity; JAMES FERGUSON,
individually and in his official capacity;
and LAFARIUS HOSKINS, individually and in
his official capacity                                                                                DEFENDANTS

## OPINION AND ORDER

The plaintiff alleges that two jailers, James Ferguson and Lafarius Hoskins, sexually assaulted her while she was housed in the W.C. "Dub" Brassell Adult Detention Center. She brings this action against Ferguson and Hoskins as well as Jefferson County, Arkansas, the owner and operator of the jail, Gerald Robinson, the sheriff of Jefferson County, Greg Bolin, the chief jail administrator at the time, and Tyra Tyler, the assistant jail administrator. She alleges claims for violations of the United States and Arkansas constitutions pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-101, *et seq.*, civil liability for commission of a felony under Ark. Code Ann. § 16-118-107, and assault and battery, the tort of outrage, and negligent supervision.

Jefferson County, Robinson, Bolin, and Tyler have moved for summary judgment on all claims against them. A court should grant summary judgment if the evidence demonstrates that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct.

2548, 2553, 91 L. Ed. 2d 265 (1986). If the moving party meets that burden, the nonmoving party must come forward with specific facts that establish a genuine dispute of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). A genuine dispute of material fact exists only if the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). The Court must view the evidence in the light most favorable to the nonmoving party and must give that party the benefit of all reasonable inferences that can be drawn from the record. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015). If the nonmoving party fails to present evidence sufficient to establish an essential element of a claim on which that party bears the burden of proof, then the moving party is entitled to judgment as a matter of law. *Id*. Where a genuine dispute exists, the facts are set forth in the light most favorable to the plaintiff as the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 1776, 167 L. Ed. 2d 686 (2007).

The plaintiff was incarcerated in the W.C. "Dub" Brassell Adult Detention Center on or around December 22, 2015, after violating the terms of her probation. On the evening of March 4 or very early hours of March 5, 2016,[1] Ferguson and Hoskins began talking to the plaintiff through the intercom system in sexually explicit terms and eventually told her to exit her cell naked. They threatened her if she refused to comply and further demanded that she follow them to a restroom. Ferguson entered the restroom with the plaintiff, locked the door, and raped her. Ferguson then left and Hoskins entered the restroom and also raped her. The plaintiff was transferred out of the jail on March 9 to an Arkansas Department of Correction's facility in Pine Bluff.

---

[1]The defendants say the incident occurred on the evening of March 5 or very early hours of March 6.

On Monday March 7, 2016, Captain Terry Peckham, an internal affairs investigator in the Jefferson County Sheriff's Office, was assigned to investigate the incident and began investigating that same day. His findings are detailed in a report, which the defendants have attached as an exhibit to their motion for this Court's consideration. *See* Document #25-6. Through interviews with jail employees, Peckham learned that at least four jailers—Ferguson, Hoskins, Xavion Culclager, and Marco Martinez—used the intercom system to talk with female inmates in sexually inappropriate ways. Martinez was removed from his post in the control room because he had been talking with female inmates over the intercom system. *Id.* at 92. Culclager replaced Martinez in the control room, but female inmates later complained to jail staff that he too would talk to them over the intercom at night. Culclager's superior warned him to stop immediately, and she reported his behavior to her superior as well.

A kitchen worker also told Peckham that she witnessed Ferguson and Hoskins interact inappropriately with the female inmates beginning in December 2015. The kitchen worker says that she reported her concerns to two jail employees who are not defendants in this action. The plaintiff testified that Ferguson had been talking to her in sexually inappropriate ways through the intercom system in her cell frequently during her detainment in the jail.

The plaintiff's cellmate told Peckham that male jailers would watch female inmates dancing nude. She also told Peckham that on approximately February 6, 2016, she reported what was going on with the plaintiff and the male jailers to Major Tyler but nothing was done as far as she knew. When Peckham confronted Tyler about whether she was made aware of the male jailers' actions, she denied any knowledge. Peckham was able to find a video recording showing the plaintiff's cellmate having a conversation with Tyler on February 6, 2016. Peckham showed Tyler the recording and Peckham reports Tyler acknowledging that she "dropped the ball" and "felt terrible

3

about the fact that maybe had she acted on this information, the incident with Hoskins and Ferguson may not have ever had the opportunity to occur." Document #25-6 at 90. There is no evidence that Robinson or Bolin were made aware of any of this misconduct until after the plaintiff's assault.

Peckham concluded that the evidence was sufficient to establish that Ferguson, Hoskins, Culclager, and Martinez engaged in conduct unbecoming of an employee between mid-December 2015 and March 5, 2016. *Id.* at 100. Peckham recommended that each jailer be terminated. Peckham also concluded that Tyler received information of misconduct by jailers but failed to act on it, which constituted inefficiency and neglect of duty and warranted a 15-day suspension without pay. *Id.* at 100.

The plaintiff argues that Jefferson County is liable under 42 U.S.C. § 1983 because it has a "longstanding custom and practice to not investigate or even take seriously complaints of sexual misconduct against male employees." Document #28 at 14. She also argues that this case "involves a distressing failure to train and supervise male prison guards and their interactions with female prisoners." *Id*. at 26.

A municipality may be liable under section 1983 for official policies that violate constitutional rights or for misconduct by its employees that is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690-91, 98 S. Ct. 2018, 2036, 56 L. Ed. 2d 611 (1978) (footnote and internal quotation omitted). To establish a "custom or usage" of failing to investigate sexual misconduct, the plaintiff must show:

> (1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
>
> (2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that

misconduct; and

(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., proof that the custom was the moving force behind the constitutional violation.

*Ware v. Jackson Cnty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998) (citation omitted). For the county to be subject to section 1983 liability for inadequate training, the evidence must show (1) the county's training practices were inadequate, (2) the county was deliberately indifferent to the rights of others in adopting those inadequate policies so that the failure to train reflects a deliberate choice by the county, and (3) the deficiency in the training procedures actually caused the plaintiff's injury. *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010). The test for deliberate indifference by a county is objective, which means that an obvious risk or constructive notice is sufficient to find the county deliberately indifferent to the rights of others. *See Canton v. Harris*, 489 U.S. 378, 390, 109 S. Ct. 1197, 1205, 103 L. Ed. 2d 412 (1989).

The plaintiff's evidence of prior misconduct consists of a few prior incidents involving Ferguson, Hoskins, Martinez and Culclager talking indecently to female inmates and watching female inmates dance naked in the weeks preceding the rape. The plaintiff has produced no evidence that a final policymaker for the jail had information that these instances of misconduct were occurring such that Jefferson County could be found to be deliberately indifferent to or to have tacitly authorized the misconduct. *Cf. Ware*, 150 F.3d at 883 (reiterating that municipal liability based on custom or usage requires an official with final authority to act with deliberate indifference or to tacitly authorize the misconduct). Tyler is not an official with final authority.

Likewise, the evidence fails to create a genuine issue of material fact on the plaintiff's inadequate training claim. The testimony of Robinson and Bolin established that new employees at the detention center, including Ferguson and Hoskins, receive eighty hours of training. The eighty

5

hours of training includes training in the County's sexual harassment policy. The plaintiff has failed to introduce evidence from which a reasonable jury could conclude that this training was inadequate, much less that it reflected a deliberate indifference by the County or its officers to the rights of others. Nor has the plaintiff introduced evidence to show that any deficiency in training procedures caused Ferguson and Hoskins to commit sexual assault. *Cf. Parrish*, 594 F.3d at 897-1000. Indeed, she testified that they threatened to make her life miserable if she told anyone what they had done, which shows that they knew that their behavior violated the County's policy and they engaged in that behavior anyway.

The plaintiff argues that Robinson, Bolin, and Tyler were deliberately indifferent and "knowingly decided to allow their deputies and employees to commit sexual misconduct against" the plaintiff. Document #28 at 20. The defendants argue that they are entitled to qualified immunity.[2] Qualified immunity shields jail officials from section 1983 liability where a plaintiff fails to show that the officials acted with deliberate indifference to the risk of unconstitutional harm. *Luckert v. Dodge Cnty.*, 684 F.3d 808, 817 (8th Cir. 2012). A jail official may not be held liable under a theory of respondeat superior but may be liable if his failure to take corrective action constitutes deliberate indifference or tacit authorization of the misconduct. *Id.* The deliberate-indifference standard against a jail official in his individual capacity is subjective: the official must know of and disregard the risk to the inmate, and "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994).

---

[2]The analysis is the same under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act. *See Baldridge v. Cordes*, 350 Ark. 114, 119, 85 S.W.3d 511, 514 (2002) ("As applied by this court, the doctrine of qualified immunity is akin to its federal counterpart.").

6

The plaintiff has presented no evidence that Bolin or Robinson knew of the prior incidents of misconduct or of the risk posed by the jailers to inmates. The plaintiff testified that she did not report any misconduct to Bolin or Robinson during her time there. She has presented no evidence that either of them knew about the misconduct of Ferguson, Hoskins, Culclager, or Martinez. The plaintiff has not shown that Robinson or Bolin were deliberately indifferent to the risk posed to her. Each is entitled to qualified immunity.

The same is not true for Tyler. The plaintiff's cellmate says that she told Tyler of the sexually explicit conversations between jailers and the plaintiff. Peckham in his investigation found a recording showing that the cellmate had a conversation with Tyler on the day and time she said that she did. Tyler's words to Peckham that she "dropped the ball" and "felt terrible about the fact that maybe had she acted on this information, the incident with Hoskins and Ferguson may not have ever had the opportunity to occur" create a genuine question as to whether she was deliberately indifferent to the risk posed to the plaintiff.

The defendants argue that Tyler may have known about inappropriate conversations but that those conversations are not enough to provide adequate notice of a risk of sexual assault. An official does not need to be "subjectively aware of the actual harm that the plaintiff experienced" before being found deliberately indifferent. *See Kahle v. Leonard*, 477 F.3d 544, 551 (8th Cir. 2007). As the Supreme Court in *Farmer* explained, a plaintiff is not required to show that an "official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." 511 U.S. at 842, 114 S. Ct. at 1981. Whether Tyler's conduct constitutes deliberate indifference is a question of fact for the jury. *See id.* ("Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways.").

The plaintiff has alleged that Jefferson County, Robinson, Bolin, and Tyler are liable for common law intentional torts of assault and battery and outrage as well civil liability under Ark. Code Ann. § 16-118-107 for the criminal acts of Ferguson and Hoskins under a theory of respondeat superior. Respondeat superior liability only extends to acts performed within the scope of the offender's employment. *Porter v. Harshfield*, 329 Ark. 130, 137, 948 S.W.2d 83, 86 (1997). In her briefs, the plaintiff does not dispute the defendants' contention that they are not liable under a theory of respondeat superior. Instead, she attempts to argue that the claims against these "Defendants are not for the actions of [Ferguson and Hoskins], but for the Defendants' intentional and willful disregard of her protection." In her complaint, however, each count asserting these claims contains a heading that includes "Respondeat Superior" and each count includes a paragraph that says, "Therefore, Defendants Jefferson County, Robinson, Bolin and Tyler are liable for the actions of Defendants Ferguson and Hoskins through the doctrine of *Respondeat Superior*." There is no evidence that any of these four defendants participated in an assault and battery, intended to inflict emotional distress, or committed a felony. The claims for assault and battery, outrage, and civil liability under Ark. Code Ann. § 16-118-107 against these defendants are claims for respondeat superior liability and must be dismissed.

The final claim against these defendants is for negligent supervision. Jefferson County is statutorily immune from liability for damages under this claim "except to the extent that [it] may be covered by liability insurance." Ark. Code. Ann. § 21-9-301. Robinson, Bolin, and Tyler share a more limited immunity under section 21-9-301 that is governed by federal qualified immunity standards. *See Smith v. Brt*, 363 Ark. 126, 131, 211 S.W.3d 485, 489 (2005). Jefferson County is covered by a self-funded risk management plan that provides motor vehicle insurance. *See* Ark. Code Ann. § 21-9-303. The exception to immunity applies only to the extent the insurance provides

coverage for the claim. This self-funded motor vehicle insurance does not provide coverage for the plaintiff's claim of negligent supervision. *See City of Malvern v. Jenkins*, 2013 Ark. 24, 10, 425 S.W.3d 711, 717 (2013). Jefferson County is entitled to statutory immunity. Robinson and Bolin are also entitled to immunity under section 21-9-301 as this Court has held that they are entitled to qualified immunity. *See Smith*, 363 Ark. at 131, 211 S.W.3d at 490. Because Tyler is not entitled to qualified immunity, neither is she entitled to immunity under Arkansas law. *See id.*

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Document #24. All of the plaintiff's claims against Jefferson County, Gerald Robinson, and Greg Bolin are dismissed with prejudice. Her claims against Tyra Tyler under 42 U.S.C. § 1983 and the Arkansas Civil Rights Act, as well as the negligent supervision claim, remain. All of the other claims asserted by the plaintiff against Tyra Tyler are dismissed with prejudice.

IT IS SO ORDERED this 6th day of April, 2018.

_____
J. LEON HOLMES
UNITED STATES DISTRICT JUDGE